UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE RETIREMENT FUND OF LOCAL 1482
PAINT AND ALLIED PRODUCTS
MANUFACTURERS, BY ITS TRUSTEE,

                       Plaintiff,

    -against-

NORTHERN ADHESIVES, INC. a/k/a
NORTHERN ADHESIVES CO., INC. and JOHN
DOE COMPANIES 1-99,

                      Defendants.
------------------------------------------------------------X

REPORT AND
RECOMMENDATION
22 CV 5850 (HG)(RML)

LEVY, United States Magistrate Judge:

        By order dated January 10, 2023, the Honorable Hector Gonzalez, United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation. For the reasons explained below, I respectfully recommend that the motion be granted and that plaintiff be awarded $7,568,543.78, plus additional interest.

## BACKGROUND AND FACTS

        Plaintiff Retirement Fund of Local 1482 and Allied Products Manufacturers ("Retirement Fund"), by its trustee ("plaintiff"), commenced this action on September 30, 2022 against Northern Adhesives, Inc. a/k/a Northern Adhesives Co., Inc. ("Northern Adhesives" or "defendant") to collect withdrawal liability and statutory damages pursuant to sections 502, 515, and 4301 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132, 1145, and 1451.[1] (See Complaint, dated Sept. 30, 2022 ("Compl."), Dkt. No.

---

[1] The Complaint also includes a cause of action against defendants John Doe Companies 1-99, fictitious defendants representing any other persons, entities, trades, or businesses under common control with Northern Adhesives, and thus jointly liable with Northern Adhesives for the
                                                                            (Continued….)

1.) The Retirement Fund is a multiemployer pension plan within the meaning of section 3(37) of ERISA, 29 U.S.C. § 1002(37), and an "employee pension benefit plan" within the meaning of section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), that is subject to ERISA's withdrawal liability provisions.[2]  (Id. ¶ 6.)

On or about May 1, 2021, the Retirement Fund incurred a mass withdrawal of all its contributing employers. (Id. ¶ 7.) The Retirement Fund is now insolvent and receives funding from the Pension Benefit Guaranty Corporation ("PBGC"). (Id.) It is administered by a Third-Party Plan Administrator, I E Shaffer & Co. (Id. ¶ 8.)

Northern Adhesives, a New York corporation, was a party to a collective bargaining agreement that required it to make contributions to the Retirement Fund. (Id. ¶¶ 10, 11.) Northern Adhesives permanently ceased all covered operations under the Retirement Fund

---

amounts due. The Retirement Fund now seeks dismissal of the Complaint against defendants John Doe Companies 1-99 without prejudice, and with leave to either reopen this action or bring a new action against any person, entity, or business that falls within Northern Adhesives' controlled group, once identified, for the amount of judgment awarded in this action, plus additional damages, if any. (Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, dated Dec. 2, 2022, Dkt. No. 10-6, at 2.) I respectfully recommend that this request be granted.

[2]  Under the Multiemployer Pension Plan Amendments Act of 1980, "an employer [that] withdraws from a multiemployer plan . . . is liable to the plan in the amount determined . . . to be the withdrawal liability." ERISA § 4201(a), 29 U.S.C. § 1381(a). "This withdrawal liability is the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets." Pension Ben. Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 725 (1984) (quoting 29 U.S.C. §§ 1381, 1391). The employer pays its withdrawal liability in installments, which are calculated based on the employer's historical contribution amounts. See ERISA §§ 4211(c), 4219(c), 29 U.S.C. §§ 1391(c), 1399(c); see also Trs. of Gen. Bldg. Laborers' Loc. 66 Pension Fund v. J.M.R. Concrete Corp., No. 19 CV 1214, 2021 WL 6211631, at *2 (E.D.N.Y. Sept. 29, 2021). ERISA states that employers wishing to defend claims for withdrawal liability must do so by demanding arbitration within prescribed time limits following receipt of the withdrawal liability assessment; an employer that fails to do so in a timely manner is "barred from challenging [the fund's] calculation of the amount of unpaid withdrawal liability." Trs. of Loc. 531 Pension Fund v. Flexwrap Corp., 818 F. Supp. 2d 585, 590 (E.D.N.Y. 2011).

and/or permanently ceased to have an obligation to contribute to the Retirement Fund, thereby withdrawing from the Retirement Fund within the meaning of ERISA § 4203(a), 29 U.S.C. § 383(a).  (Id. ¶ 12.)

By letter dated April 27, 2022 (the "Demand Letter"), the Retirement Fund notified Northern Adhesives, in accordance with 29 C.F.R. § 4219.16(a), that it had experienced a mass withdrawal under ERISA on or about May 1, 2021.  (Id. ¶ 13.)  The Demand Letter advised Northern Adhesives that it had effected a complete withdrawal from the Retirement Fund and was therefore subject to the payment of withdrawal liability pursuant to ERISA § 4203(a), 29 U.S.C. § 1383(a), and the terms of the Retirement Fund and the Trust Agreement. (Id. ¶ 14.)  The Demand Letter included Northern Adhesives' payment schedule of quarterly installments of $2,064.  (Id.)  In accordance with ERISA § 4219(c)(2), 29 U.S.C. § 1399(c)(2), the payments were to commence no later than sixty days after the date of the Demand Letter. (Id.)

Because the Retirement Fund had experienced a mass withdrawal as of May 1, 2021, Northern Adhesives was subject to the payment of mass withdrawal liability under ERISA § 4219(c)(1)(d).  (Id. ¶ 15.)  On May 16, 2022, the Retirement Fund issued a notice and demand (the "Reallocation Demand Letter") for the payment of reallocation liability, the final piece of the mass withdrawal liability owed by Northern Adhesives.  (Id.)  The Reallocation Demand Letter noted that the Retirement Fund calculated Northern Adhesives' reallocation liability to be $6,221,319, payable in quarterly installments of $2,064, which were to be infinite.  (Id. ¶ 16.)

By letters dated June 16, 2022 (collectively and individually, the "Default Letter"), the Retirement Fund notified Northern Adhesives that it had not received the initial $2,064 payment as required under its payment schedule and that the $2,064 payment was past

3

due. (Id. ¶ 17.) The Default Letter explained that if Northern Adhesives' failure to pay was not cured within sixty days, it would be deemed to be in default of its withdrawal liability pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399 (c)(5). (Id.) Once in default, the Retirement Fund would be entitled to require immediate payment of the outstanding amount of Northern Adhesives' reallocation withdrawal liability, plus accrued interest. (Id.)

Northern Adhesives failed to cure its default. (Id. ¶ 18.) Accordingly, the Retirement Fund accelerated Northern Adhesives' entire outstanding withdrawal liability. (Id.) Plaintiff filed this case on September 30, 2022, and despite being properly served on October 3, 2022 (see Affidavit of Service of James Perone, dated Oct. 3, 2022, Dkt. No. 5), defendant failed to respond. The Clerk of the Court entered Northern Adhesives' default on November 4, 2022. (See Clerk's Entry of Default, dated Nov. 4, 2022, Dkt. No. 9.) Plaintiff now seeks a default judgment against Northern Adhesives in the amount of $7,568,543.78, consisting of (i) $6,221,319 in withdrawal liability principal, (ii) $98,072.18 in interest through November 30, 2022, plus $950.48 in additional daily interest commencing on December 1, 2022, (iii) $1,244,263.80 in liquidated damages, and (iv) $4,888.80 in attorney's fees and costs. (Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, dated Dec. 2, 2022 ("Pl.'s Mem."), Dkt. No. 10-6, at 1.) Plaintiff's default submissions were duly served on defendant in compliance with Local Civil Rule 55.2(c). (See Supplemental Declaration of Michael S. Adler, Esq., dated Dec. 2, 2022, Dkt. No. 11; Affidavit of Service of Juan D. Aguirre, sworn to Dec. 6, 2022, Dkt. No. 12.

## DISCUSSION

### A. Default Judgment Standard

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After the certificate of default is entered, the district court may enter a default judgment. FED. R. CIV. P. 55(b); see also E.D.N.Y. LOC. CIV. R. 55.2(b). Plaintiff has complied with these rules and accordingly is entitled to a default judgment against Northern Adhesives for its failure to answer or otherwise respond to the complaint.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). "A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct." Cablevision City Corp. v. Lokshin, 980 F. Supp. 107, 111 (E.D.N.Y. 1997). Here, Northern Adhesives is in default and therefore admits all of the well-pleaded allegations in the complaint. See Romanowicz, 577 F.3d at 84.

### B. Withdrawal Liability

To establish a successful withdrawal liability claim, "a 'plan sponsor must (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the

5

schedule.'"  Ret. Plan of Nat'l Ret. Fund v. Lackmann Culinary Servs., Inc., No. 10 CV 6316, 2011 WL 3366354, at *3 (S.D.N.Y. July 29, 2011) (quoting Trs. of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., No. 03 CV 4530, 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004); 29 U.S.C. §§ 1382, 1399(b)(1)).

Here, Northern Adhesives permanently ceased to have operations covered by the collective bargaining agreement and permanently ceased to have an obligation to contribute to the Retirement Fund, thereby effecting a complete withdrawal from the Retirement Fund within the meaning of ERISA § 4203(a), 29 U.S.C. § 1383(a).  (See Compl. ¶ 12; Declaration of Michael S. Adler, Esq., dated Dec. 2, 2022 ("Adler Decl."), Dkt. No. 10-4, Ex. A; Declaration of Monica DeRyder, dated Nov. 30, 2022 ("DeRyder Decl."), Dkt. No. 10-2, ¶ 15); see also F.H. Cobb Co. v. N.Y. State Teamsters Conf. Pens. & Ret. Fund, 584 F. Supp. 1181, 1184 (N.D.N.Y. 1984) (finding employer withdrew from plan where employer "permanently ceased all covered operations.").  As a result of Northern Adhesives' complete withdrawal from the Retirement Fund, Northern Adhesives became liable to the Retirement Fund for withdrawal liability pursuant to ERISA § 4201, 29 U.S.C. §1381.  See ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc., 846 F. 2d 879, 880-81 (2d Cir. 1988) (explaining mechanics of withdrawal liability).

An employer may be found in default of its ERISA obligations where it fails "to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure," and "any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability."  29 U.S.C. § 1399(c)(5).  Upon a finding of default, "a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the

6

due date of the first payment which was not timely made." Id.; see also Div. 1181 Amalgamated Transit Union—N.Y. Emps. Pension Fund v. D & A Bus Co., 270 F. Supp. 3d 593, 608 (E.D.N.Y. 2017) (collecting cases).

Northern Adhesives failed to make the withdrawal liability payments as required by the Retirement Fund's Notice and Demand letters and did not request arbitration to contest the amount of withdrawal liability owed. (See Adler Decl., Ex. A; Compl. ¶¶ 13-20; DeRyder Decl. ¶¶ 13-26 & Exs. C-E); see also 29 U.S.C. §§ 1132(g)(2), 1145, 1151(b). Where an employer fails to timely request arbitration, its ability to contest the amount of withdrawal liability due and owning is foreclosed. See Bakery & Confectionary Union & Indus. Pension Fund v. Mt. Rose Ravioli & Macaroni Co., No. 09 CV 3068, 2011 WL 6130975, at *3 (E.D.N.Y. Nov. 10, 2011), report and recommendation adopted, 2011 WL 6131697 (E.D.N.Y. Dec. 8, 2011) ("Mt. Rose did not demand or initiate arbitration, a lapse that constitutes a waiver of its right to contest withdrawal liability assessment."); Trs. of Loc. 531 Pension Fund v. Flexwrap Corp., 818 F. Supp. 2d 585, 589 (E.D.N.Y. 2011) ("Any dispute over the plan's calculation of withdrawal liability must be settled through arbitration, and if the employer fails to request arbitration within the statutory time frame, it is barred from challenging the amount of withdrawal liability calculated by the plan."). Accordingly, the court may "adopt[ ] [ ] the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated." LaBarbera v. United Crane & Rigging Servs., Inc., No. 08 CV 3274, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011).

Because Northern Adhesives failed to cure its default, plaintiffs are entitled to judgment for withdrawal liability principal. I therefore respectfully recommend that plaintiff be awarded $6,221,319 in withdrawal liability principal, as calculated by plaintiff's actuary. (See

7

Compl. ¶ 20; Plaintiff's Statement of Amounts Due, Dkt. No. 10-7; DeRyder Decl. ¶ 27; Adler Decl. ¶ 12.)

### C. Interest

ERISA mandates that a damages award include interest on unpaid contributions. See 29 U.S.C. § 1132(g)(2)(B). The Retirement Fund documents do not state which rates to use, but since the Retirement Fund receives its funding from the PBGC, the Retirement Fund used the interest rates set forth by the PBGC. (Adler Decl. ¶ 14); see also 29 C.F.R. § 4219.32(b); UFCW Loc. 174 Pension Fund v. Int'l Glatt Kosher Meat Processing Corp., No. 17 CV 5790, 2018 WL 3742731, at *6 (E.D.N.Y. May 15, 2018) (applying PBGC interest rates when awarding withdrawal liability damages to retirement plan receiving PBGC funding); UFCW Loc. 50 Pension Fund v. Food Depot, Inc., No. 16 CV 6197, 2018 WL 2187657 (E.D.N.Y. Apr. 24, 2018) (applying PBGC rates where plan document did not list applicable interest rate).

29 C.F.R. § 4219.32 (b) provides that interest for withdrawal liability:

> shall be charged or credited for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loans for the fifteenth day (or next business day if the fifteenth day is not a business day) of the month preceding the beginning of each calendar quarter, as reported by the Board of Governors of the Federal Reserve System in Statistical Release H.15.

29 C.F.R. § 4219.32 (c) provides:

> The interest rate under paragraph (b) of this section is the nominal rate for any calendar quarter or portion thereof. The amount of interest due the plan for overdue or defaulted withdrawal liability, or due the employer for overpayment, is equal to the overdue, defaulted, or overpaid amount multiplied by:
> (1) For each full calendar quarter in the period from the due date (or date of overpayment) to the date paid (or date of refund), one-fourth of the annual rate in effect for that quarter;
> (2) For each full calendar month in a partial quarter in that period, one-twelfth of the annual rate in effect for that quarter; and

> (3) For each day in a partial month in that period, one-three-hundred-sixtieth of the annual rate in effect for that month.

29 C.F.R. § 4219.32 (d) provides:

> Except as otherwise provided in rules adopted by the plan, the due date from which interest accrues shall be, for an overdue withdrawal liability payment and for an amount of withdrawal liability in default, the date of the missed payment that gave rise to the delinquency or the default.

The applicable interest rates are listed at: https://perma.cc/EF2F-M4R3. The amount of interest sought through this default motion is $98,072.18, calculated through November 30, 2022.[3] (See Adler Decl. ¶ 21.) In addition, applying the applicable interest rates,[4] plaintiff calculates that interest continues to accrue beginning on December 1, 2022 at a daily rate of $950.48. (See id. ¶ 22.) I find no error in plaintiff's calculations. I therefore recommend

---

[3] Interest was calculated as follows:

> (a) for August 3, 2022 through September 30, 2022, the interest rate was 4%, so
> (i) $6,221,319 x 4% = $248,852.76; (ii) $248,852.76 x 58 (days between August 3, 2022 and September 30, 2022) = $14,433,460.10; and (iii) $14,433,460.10 /360 (360th the annual rate for the partial month) = $40,092.94; plus
> (b) for October 1, 2022 through November 30, 2022, the interest rate was 5.5%, so (i) $6,221,319 x 5.5% = $342,172.545; (ii) $342,172.545 x 61 (days between October 1, 2022 and November 30, 2022) = $18,477,317.40; and (iii) $20,872,525.20 /360 (360th the annual rate for the partial month) = $57,979.24.
> The amount of interest sought through this default motion is $98,072.18 ($40,092.94 + $57,979.24), calculated through November 30, 2022.

(Adler Decl. ¶¶ 20, 21.)

[4] Plaintiff used the 5.5 percent interest rate applicable to the period of October 1 to December 31, 2022. (See Adler Decl. ¶ 23; https://perma.cc/EF2F-M4R3.) The interest rate has since gone up to 7.5 percent and 7.75 percent, but plaintiff has not submitted updated calculations or requested a higher interest rate.

9

that plaintiff be awarded $98,072.18, plus prejudgment interest at a per diem rate of $950.48 from December 1, 2022 to the date of judgment.

### D. Liquidated Damages

Pursuant to ERISA §§ 4301(b), 515, and 502(g)(2)(C), 29 U.S.C. §§ 1451(b), 1145, and 1132(g)(2)(C), Northern Adhesives is required to pay liquidated damages in the amount of interest or twenty percent of the withdrawal liability principal, whichever is greater. See 29 U.S.C. §1132(g)(2); ILGWU Nat'l Ret. Fund v. Omega Fashions, Ltd., No. 01 CV 6901, 2002 WL 27779, at *1 (S.D.N.Y. Jan. 10, 2002) (liquidated damages under ERISA section 502(g)(2) are available for claim based on failure to pay withdrawal liability); ILGWU Nat'l Ret. Fund v. West-Helena Sportswear, Inc., No. 96 CV 1007, 1997 WL 73696, at *2 (S.D.N.Y. Feb. 20, 2007) (same). Liquidated damages are therefore $1,244,263.80, equal to twenty percent of the withdrawal liability principal due. (See Adler Decl. ¶ 23.)

### E. Post-Judgment Interest

In this Circuit, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) (quoting 28 U.S.C. § 1961(a)); Bakery & Confectionery Union v. Mrs. Maxwell's Bakery, Inc., No. 21 CV 308, 2022 WL 18107257, at *15 (E.D.N.Y. Dec. 6, 2022). "The post-judgment interest rate in an ERISA action is tied 'to the weekly average 1-year constant maturity Treasury yield . . . for the week preceding the date of judgment.'" Genworth Life & Health Ins. Co. v. Beverly, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008) (alteration in original) (quoting 28 U.S.C. § 1961(a)). I therefore recommend that plaintiff be awarded post-judgment interest on the total judgment, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters final judgment until the date of payment.

F. <u>Attorney's Fees and Costs</u>

Plaintiff requests $4,888.80 in attorney's fees and costs. (See Pl.'s Mem. at 13.) Although ERISA mandates the recovery of attorney's fees in a successful action to recover damages, courts have broad discretion in determining what constitutes a reasonable attorney's fee. See 29 U.S.C. § 1132(g)(2)(D); 29 U.S.C. § 1451(e); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 183-84 (2d Cir. 2008); see also <u>LaBarbera v. Clestra Hauserman, Inc.</u>, 369 F.3d 224, 226 (2d Cir. 2004) (award of attorney's fees and costs is mandatory under ERISA § 502(g)(2)(D)); <u>Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc.</u>, No. 98 CV 4040, 1999 WL 370667, at *2 (S.D.N.Y. June 7, 1999) ("[a]lthough the amount of any such award rests within the Court's discretion, the award itself is mandatory.")

In the Second Circuit, attorney's fees are awarded by determining a "presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours." <u>Arbor Hill</u>, 522 F. 3d at 186. The reasonable hourly rate is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." <u>Bergerson v. New York State Office of Mental Health</u>, 652 F.3d 277, 289-90 (2d Cir. 2011) (citations and internal quotations omitted). In determining reasonable hourly rates, courts consider a number of factors, including the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, awards given in similar cases, and the experience, reputation, and ability of counsel. See <u>Arbor Hill</u>, 522 F.3d at 186 n.3; <u>Shim v. Millennium Grp.</u>, No. 08 CV 3022, 2010 WL 2772493, at *1 n.2 (E.D.N.Y. June 21, 2010).

11

Further, under the "forum rule," courts typically assess an attorney's requested hourly rate by comparison to other rates awarded in the district in which the reviewing court sits. See Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174-75 (2d Cir. 2009). "Reasonable hourly rates in this district range 'from $300 to $450 per hour for partners . . . and $70 to $100 per hour for paralegals.'" Finkel v. Gaffney-Kroese Elec. Supply Corp., No. 22 CV 1777, 2023 WL 2579165, at *12 (E.D.N.Y. Feb. 22, 2023) (quoting Ret. Fund of Loc. 1482 Paint & Allied Prod. Mfrs. v. N. Adhesives, Inc., No. 19 CV 5609, 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020), report and recommendation adopted, 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020); see also Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 19 CV 2312, 2020 WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020), report and recommendation adopted, 2020 WL 1666461 (E.D.N.Y. Apr. 3, 2020).

In this case, plaintiff requests an hourly rate of $400 for Michael S. Adler, a partner with the law firm of Cohen, Weiss and Simon LLP, and $100 for paralegal George T. Kramer. (Adler Decl. ¶ 27.) Mr. Adler has practiced law relating to employee benefits since 2003. (Id. ¶ 29). His time has been compensated at the rate of $400 per hour in this district. See Ferrara v. Heavy Constr. Lumber, Inc., No. 21 CV 2562, 2022 WL 1085380, at *7 (E.D.N.Y. Jan. 5, 2022), report and recommendation adopted, 2022 WL 620617 (E.D.N.Y. Mar. 2, 2022). The paralegal rate is also within the range awarded in this district. See Gaffney-Kroese Elec. Supply Corp., 2023 WL 2579165, at *13 (awarding $110 hourly rate for paralegals); Gesualdi v. Town Holding Corp., No. 18 CV 5744, 2019 WL 5693803, at *7 (E.D.N.Y. Aug. 15, 2019) (citing two cases finding that $110 is a reasonable hourly rate for paralegals). I therefore recommend that these hourly rates be approved.

12

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended.  See Arbor Hill, 522 F.3d at 186; see also Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  With limited exceptions, contemporaneous time records are a prerequisite for attorney's fees in this circuit.  N.Y. State Ass'n for Retarded Child., Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).  Here, plaintiff has submitted attorney time records reflecting 10.2 hours spent by Mr. Adler and 3.3 hours spent by Mr. Kramer.  (See Adler Decl. ¶ 27, Ex. D.)  I find this number of hours reasonable.  See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Atl. Steel Sols., LLC, No. 21 CV 2518, 2022 WL 4642735, at *11 (E.D.N.Y. Sept. 15, 2022), report and recommendation adopted, 2022 WL 4662723 (E.D.N.Y. Sept. 30, 2022), supplemented, 2022 WL 11727626 (E.D.N.Y. Oct. 20, 2022) (finding 22.9 hours reasonable for an ERISA default motion, and collecting cases awarding fees for fourteen to twenty-eight hours in the ERISA default context).  I therefore recommend that plaintiff be awarded $4,410 in attorney's fees.

Plaintiff also seeks costs totaling $478.80.  (See Pl.'s Mem. at 13; Adler Decl. ¶¶ 29-34 & Exs. D, E.)  "When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients."  N. Adhesives, Inc., 2020 WL 6370060, at *5; see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (holding that expenses such as "duplicating, postage, telephone, computerized legal research and other office expenses" are ordinarily recoverable and not absorbed into an attorney's fee as overhead).  I find these costs to be documented and reasonable, and I recommend awarding $478.80 in costs.

13

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff's motion for default judgment against Northern Adhesives be granted and that plaintiff be awarded $7,568,543.78, consisting of (i) $6,221,319 in withdrawal liability principal, (ii) $98,072.18 in interest through November 30, 2022, plus $950.48 in additional daily interest commencing on December 1, 2022, (iii) $1,244,263.80 in liquidated damages, and (iv) $4,888.80 in attorney's fees and costs.  Any objection to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days, with a courtesy copy to Judge Gonzalez.  Failure to file objections in a timely manner may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

                Respectfully submitted,

                /s/
                ROBERT M. LEVY
                United States Magistrate Judge

Dated: Brooklyn, New York
       June 20, 2023